UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| JOEY D. RHULE #00595477, | ) |
| Plaintiff, | ) ) ) |
| v. | ) NO. 3:21-cv-00067 |
| TONY PARKER, et al., | ) ) ) |
| Defendants. | ) |

## MEMORANDUM OPINION

Joey D. Rhule, an inmate currently confined at Morgan County Correctional Complex in Wartburg, Tennessee, filed a pro se Amended Complaint under 42 U.S.C. § 1983 (Doc. No. 16) and has been granted pauper status (Doc. No. 4). The Amended Complaint is before the Court for an initial review under the appropriate statutes. As explained below, Plaintiff will be appointed counsel and this action will be referred to the Magistrate Judge for further proceedings.

**I.     Initial Review**

The Court must dismiss this action if it is frivolous or malicious, fails to state a claim, or seeks monetary relief against a defendant who is immune from such relief. 28 U.S.C. §§ 1915(e)(2)(B), 1915A(b); 42 U.S.C. § 1997e(c). The Court also must liberally construe pro se pleadings and hold them to "less stringent standards than formal pleadings drafted by lawyers." Erickson v. Pardus, 551 U.S. 89, 94 (2007) (citing Estelle v. Gamble, 429 U.S. 97, 106 (1976)).

**A.     Factual Allegations**

**1.     March 1, 2019 – December 2, 2019 (Pickett and Fentress Counties)**

Plaintiff alleges that, on March 1, 2019, he was arrested by the Pickett County Sheriff's Office (PCSO) and taken to the Fentress County Sheriff's Office (FCSO). (Doc. No. 16 at 21).

Plaintiff was housed at FCSO but transported to and from subsequent medical appointments by PCSO staff. (See id.). On April 5, Plaintiff was taken to the Eye Center of Tennessee because he had a detached retina. (Id.). On April 15 and May 20, respectively, Plaintiff was taken to Tennessee Retina for an initial visit and a follow-up appointment. (Id.). On July 29, after "several" attempts, Tennessee Retina got Plaintiff scheduled for another follow-up appointment. (Id.). On August 5 and September 3, Plaintiff was taken to Tennessee Retina for appointments. (Id.).

On September 23, 2019, Plaintiff was taken to Centennial Medical Center in Nashville and underwent retina attachment surgery on his right eye. (Id.). He returned to FCSO that same day. (Id.) On September 24 and October 24, Plaintiff was taken to Tennessee Retina for follow-up appointments. (Id.). By the latter date, Plaintiff alleges that his "eye had worsened." (Id.).

On November 6, 2019, Plaintiff asked PCSO and FCSO staff about follow-up treatment for his eye, and they told him that "he would have an appointment soon." (Id. at 21–22). Plaintiff had an appointment at Tennessee Retina scheduled for November 18, but he was not taken for it. (Id. at 22). Tennessee Retina rescheduled an appointment for Plaintiff and "stated how urgent [] Plaintiff's follow-up was," but Plaintiff was not taken to an eye appointment from that point forward. (Id.). PCSO Jail Administrator Katie Smith told Plaintiff that he would not get his "prescribed follow-up eye surgery" until he was transferred to a prison. (Id.).

On November 14, 2019, Plaintiff received a state sentence but remained housed at FCSO. (Id.). On December 2, Plaintiff alleges, the PCSO and FCSO "denied Plaintiff surgical appointments to save cost" and Plaintiff was transferred to the Bledsoe County Correctional Complex (BCCX) in Pikeville. (Id.).

2

### 2.     December 2, 2019 – January 29, 2020 (BCCX and DSNF)

When Plaintiff arrived at BCCX on December 2, 2019, prison officials made Plaintiff "give up his [prescribed] insulin pump," and Plaintiff's blood sugar level was been "uncontrollable" since then. (Id.). That same day, Dr. Lively ordered an "urgent eye referral" signed by Lanita Gann. (Id.). On December 3, Plaintiff saw Clifton Randle and completed a "retina surgery consult form." (Id.). On December 4, TDOC staff took Plaintiff to Centennial Medical Center for "eye surgery" and returned him to BCCX. (Id.).

On December 5, 2019, TDOC staff took Plaintiff to Tennessee Retina for an appointment. (Id. at 23). Plaintiff was not taken for a follow-up appointment to Tennessee Retina from that point forward, despite doctors' orders. (See id.). On December 6, Plaintiff saw medical provider Danielle Turner at BCCX, and she ordered "follow-up optometry" as soon as possible. (Id.). And on December 10, Plaintiff saw eye doctor Clifton Randle at BCCX, and he stated that Tennessee Retina had ordered a follow-up for Plaintiff with Dr. Arindale "within 3-4 days." (Id.).

On January 20, 2020, Plaintiff was transferred to DeBerry Special Needs Facility (DSNF) in Nashville so that he could be taken to an appointment at Tennessee Retina, but Plaintiff was not taken to the appointment. (Id.). Instead, on January 22, Plaintiff was transferred back to BCCX. (Id.). And on January 29, Plaintiff was transferred to Trousdale Turner Correctional Center (TTCC) in Hartsville. (Id.).

### 3.     January 29, 2020 – July 13, 2020 (TTCC)

When Plaintiff arrived at TTCC on January 29, 2020, he had a "flagged order" that he needed to see an "outside eye care provider." (Id.). On March 9, Plaintiff had an appointment to see Dr. Levck at TTCC, but Plaintiff was not taken for it. (Id.). An eye appointment was set for March 25, but Plaintiff was not informed of it or taken for it. (Id.). On March 26, March 29, April

3, and April 7, Plaintiff filled out sick call requests regarding his eye. (Id.). Plaintiff had been told that he would have another eye surgery, but he was not taken for it. (Id.).

On April 8, 2020, L. Johnson was supposed to reschedule an appointment for Plaintiff at Tennessee Retina, but she apparently did not do so. (Id. at 23–24). On May 22, Dr. Levck told Plaintiff that his eye appointment would be rescheduled "in his progress records." (Id. at 24). On May 26, TTCC medical staff inserted a "refusal of medical service" in Plaintiff's medical chart, but Plaintiff alleges that he "has no knowledge" of the refusal, he did not sign it, and it does not reflect what particular medical service was refused. (Id.).

On July 13, 2020, Plaintiff was transferred to Morgan County Correctional Complex (MCCX) in Wartburg. (Id.).

### 4.     July 13, 2020 – Present (MCCX)

Shortly after Plaintiff arrived at MCCX, on July 18, 2020, Plaintiff was "given insulin and no lunch" while in quarantine, leading to his blood sugar "bottom[ing] out." (Id.). Plaintiff fell, hit his right shoulder, and hit the right side of his head, which made his vision worse. (Id.). On July 23, Plaintiff "was referred to see a provider," but he was not taken for any appointment. (Id.).

On July 28, 2020, Plaintiff lost vision in his right eye. (Id.). From the time Plaintiff arrived at BCCX on December 2, 2019, through the day Plaintiff lost vision in his right eye, Plaintiff alleges that he did "all he could to receive surgery for his right eye." (Id.). In early January 2021, Plaintiff asked State Counselor Amanda Kelly "what was going on with his eye surgery," and Kelly said "medical explained to her that [Plaintiff] probably could not get an eye appointment before he is released on parole . . . in May of 2021." (Id.). Kelly said that Plaintiff could get eye surgery when he is released. (Id.).

4

In March 2021, Plaintiff filed a grievance stating that Sergeant Trout did not allow Correctional Officer Lum to let Plaintiff "go to medical for his insulin shot." (Id. at 25). Trout then "intimidated" Plaintiff by saying that he does not "give a \*\*\*\* about [Plaintiff]" and that Plaintiff should never file another grievance. (Id.)

### 5. This Lawsuit

Plaintiff initiated this action by filing a complaint in the Eastern District of Tennessee. (Doc. No. 2). The Eastern District granted Plaintiff pauper status (Doc. No. 4) and transferred the action here (Doc. No. 7). This Court gave Plaintiff the "opportunity to file a single Amended Complaint identifying all the Defendants Plaintiff would like to sue and all the claims Plaintiff would like to assert." (Doc. No. 15 at 1). The Court specifically advised that the Amended Complaint must "clearly identif[y] every Defendant to this suit [and] include[] every cause of action and allegation Plaintiff wishes to pursue." (Id. at 2). The Court also warned that the Amended Complaint will be "the operative pleading in this case" and that the Court "will only consider information on, or attached to" the Amended Complaint. (Id. at 2–3).

The Amended Complaint (Doc. No. 16) names a total of twenty-two Defendants in their individual and official capacities (id. at 13). Defendants fall into six groups: (1) Pickett County Sheriff's Office and Justice Center, Pickett County Sheriff Dana Dowdy, PCSO Jail Administrator Katie Smith, and "Name Unknown" Health Care Provider with the PCSO (id. at 2, 13, 15–16); (2) Fentress County Sheriff's Office and Justice Center, Fentress County Sheriff Michael Regan, FCSO Jail Administrator Candy Price, FCSO Inmate Scheduling Supervisor Terry, and "Name Unknown" Heath Care Provider with the FCSO (id. at 2, 13, 15–16, 19); (3) BCCX (id. at 1, 13); (4) TTCC, TTCC Drs. Levck, Lorrie Henson, and Trulener Walter, and "Name Unknown" Health Care Provider with Correction Corporation of America (id. at 13–14, 18–19); (5) MCCX,

5

Case 3:21-cv-00067   Document 17   Filed 04/19/21   Page 5 of 15 PageID #: 208

Centurion, and MCCX Dr. Edmund Lane (id. at 13–14, 19); and (6) TDOC, TDOC Commissioner Tony Parker, TDOC Assistant Commissioner Marina Cadreche, and TDOC Dr. Kenneth Williams (id. at 3, 13, 17).

As relief, Plaintiff requests a declaratory judgment, an injunction "ordering Defendants to implement a proper medical plan and pay for the treatment of Plaintiff's eye condition," and monetary damages. (Id. at 26).

### B. Legal Standard

To determine if the Amended Complaint passes initial review under the applicable statutes, the Court applies the Rule 12(b)(6) standard. Hill v. Lappin, 630 F.3d 468, 470–71 (6th Cir. 2010). The Court therefore accepts "all well-pleaded allegations in the complaint as true, [and] 'consider[s] the factual allegations in [the] complaint to determine if they plausibly suggest an entitlement to relief.'" Williams v. Curtin, 631 F.3d 380, 383 (6th Cir. 2011) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 681 (2009)). An assumption of truth does not extend to allegations that consist of legal conclusions or "'naked assertion[s]' devoid of 'further factual enhancement.'" Iqbal, 556 U.S. at 678 (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 557 (2007)).

### C. Analysis

"There are two elements to a § 1983 claim. First, a plaintiff must allege that a defendant acted under color of state law. Second, a plaintiff must allege that the defendant's conduct deprived the plaintiff of rights secured under federal law." Handy-Clay v. City of Memphis, Tenn., 695 F.3d 531, 539 (6th Cir. 2012) (citations omitted).

#### 1. Statute of Limitations

The Court first addresses a potential timeliness issue. The statute of limitations for claims brought under Section 1983 in Tennessee is one year. Jordan v. Blount Cnty., 885 F.3d 413, 415

6
Case 3:21-cv-00067   Document 17   Filed 04/19/21   Page 6 of 15   PageID #: 209

(6th Cir. 2018) (citing Tenn. Code Ann. § 28-3-104(a)). Under federal law, the limitation period generally "begins to run when the plaintiff knows or has reason to know that the act providing the basis of his or her injury has occurred." Harrison v. Michigan, 722 F.3d 768, 773 (6th Cir. 2013) (quoting Collyer v. Darling, 98 F.3d 211, 220 (6th Cir. 1996)).

Here, Plaintiff filed the initial Complaint on December 8, 2020.[1] Thus, Plaintiff's claims may be untimely if they are based on action or inaction that he knew occurred before December 8, 2019. This includes the entire period of time in which Plaintiff was housed at FCSO and transported to and from medical appointments by PCSO staff, as well as the first week in which he was housed at BCCX. That is so even though Plaintiff alleges an ongoing eye problem that started before December 2019 and has continued to present day. See Dearing v. Mahalma, No. 1:11-cv-204, 2011 WL 3739029, at *4–6 & n.4 (S.D. Ohio Aug. 24, 2011) (citing Bruce v. Corr. Med. Servs., Inc., 389 F. App'x 462, 463–67 (6th Cir. 2010) and Cuco v. Fed. Med. Ctr., Lexington, 257 F. App'x 897, 899–900 (6th Cir. 2007)) (explaining the "Sixth Circuit's reluctance to apply the continuing-violation doctrine to claims of deliberate indifference to serious medical needs").

The statute of limitations, however, is an affirmative defense. Surles v. Andison, 678 F.3d 452, 458 (6th Cir. 2012) (citing Fed. R. Civ. P. 8(c)). "As such, Defendants [bear] the ultimate burden of proof on that issue." Id. (citing Fonseca v. Consol. Rail Corp., 246 F.3d 585, 590 (6th Cir. 2001)). And "[t]he statute of limitations for claims subject to the PLRA is tolled while the plaintiff exhausts his required administrative remedies." Id. (citing Brown v. Morgan, 209 F.3d 595, 596 (6th Cir. 2000)).

---

[1] The Court deems the Complaint filed as of the date he signed it. (Doc. No. 2 at 5); see Brand v. Motley, 526 F.3d 921, 925 (6th Cir. 2008) (citations omitted) (noting that, "absent contrary evidence," courts assume a prisoner delivered a complaint for mailing on the date "he or she signed" it).

Here, Plaintiff alleges that he filed at least one grievance concerning the facts relating to the Complaint, but he "never heard anything." (Doc. No. 16 at 8). Plaintiff also alleges that he did "all [he] think[s] [he] could" to exhaust his administrative remedies. (Id.). Thus, from the face of the Complaint, it is unclear how long it took for Plaintiff to exhaust his administrative remedies. Given this uncertainty about the exhaustion process, the Court cannot determine how long the limitation period may have been tolled. Accordingly, the Court will not dismiss any of Plaintiff's Section 1983 claims as untimely at this stage in the proceedings.

### 2. Conclusory Allegations

This Court, and the Eastern District of Tennessee before it, specifically advised Plaintiff of the need to provide allegations that identify specific actions or inactions by each Defendant. (Doc. No. 15 at 2–3 (this Court's previous Order); Doc. No. 4 at 4 (Eastern District Order advising Plaintiff that he must provide "a short and plain statement of facts setting forth each alleged violation of his constitutional rights and the individual(s) responsible")). Nonetheless, there are two sections of purely conclusory allegations within the Amended Complaint. (See Doc. No. 16 at 20 (alleging, in part: "Each Defendant, under color of statute, ordinance, regulation, custom, or usage, of the State of Tennessee 'subject[ed] and cause[d] to be subjected Plaintiff within the jurisdiction thereof to the deprivation of rights, privileges, and immunities secured by the Constitution and laws and are liable to the Plaintiff . . . for the[ir] acts and omission[s] taken in such official capacity (judicial) for denial, delay, and interfering with adequate medical care."); id. at 25 ("All Defendants have interfered [with], delayed and denied Plaintiff follow-up and treatment he required to adequately treat his medical condition . . . .")).

These conclusory assertions of legal liability are insufficient to state a claim, see Gilmore v. Corr. Corp. of Am., 92 F. App'x 188, 190 (6th Cir. 2004) (citing Scheid v. Fanny Farmer Candy

8

Shops, Inc., 859 F.2d 434, 436 (6th Cir. 1988)) ("A complaint must contain allegations respecting all the elements to sustain a recovery under some viable legal theory."), and the Court will not consider them in conducting this initial review.

### 3. Improper Defendants

Six Defendants are not proper parties under Section 1983. Five of the six—PCSO, FCSO, BCCX, TTCC, and MCCX—are either buildings or sheriff's departments. McIntosh v. Camp Brighton, No. 14-CV-11327, 2014 WL 1584173, at *2 (E.D. Mich. Apr. 21, 2014) (collecting cases establishing that a prison facility "is not a 'person' or legal entity subject to suit under 42 U.S.C. § 1983"); Mathes v. Metro. Gov't of Nashville and Davidson Cnty., No. 3:10-cv-0496, 2010 WL 3341889, at *2 (M.D. Tenn. Aug. 25, 2010) (collecting cases establishing that "police departments and sheriff's departments are not proper parties to a § 1983 suit"). The sixth—TDOC—is a state agency. Hix v. Tenn. Dep't of Corr., 196 F. App'x 350, 355 (6th Cir. 2006) (citing Will v. Mich. Dep't of State Police, 491 U.S. 58, 64 (1989)) ("The TDOC is not a 'person' within the meaning of § 1983, and is therefore not a proper defendant."). Because they are not suable entities under Section 1983, these six Defendants will be dismissed as parties.

### 4. Individual-Capacity Claims

Plaintiff alleges that he suffered inadequate medical care.[2] An inmate's claim for inadequate medical care has "both an objective and a subjective component. The objective component requires a plaintiff to show the existence of a 'sufficiently serious' medical need." Dominguez v. Corr. Med. Servs., 555 F.3d 543, 550 (6th Cir. 2009) (quoting Farmer v. Brennan, 511 U.S. 825, 834 (1994)). "The subjective component, in contrast, requires a plaintiff to 'allege

---

[2] Plaintiff alleges that he did so as both a pretrial detainee and a convicted prisoner, but that distinction in status is irrelevant here because the Sixth Circuit applies "the same 'deliberate indifference' framework to Eighth-Amendment claims brought by prisoners as Fourteenth-Amendment claims brought by pretrial detainees." Griffith v. Franklin Cnty., Ky., 975 F.3d 554, 567 (6th Cir. 2020) (collecting cases).

9

facts which, if true, would show that the official being sued subjectively perceived facts from which to infer substantial risk to the prisoner, that he did in fact draw the inference, and that he then disregarded that risk.'" Id. (quoting Comstock v. McCrary, 273 F.3d 693, 703 (6th Cir. 2001)).

Here, Plaintiff satisfies the objective component by alleging that he had a detached retina in April 2019, and that doctors have prescribed treatment for his eye problems since that time. As to the subjective component, however, Plaintiff fails to establish the subjective component for all but two Defendants.

Of the fifteen named individual Defendants, Plaintiff provides specific allegations regarding just PCSO Jail Administrator Katie Smith and TTCC Dr. Levck. To recap, Plaintiff alleges that he underwent retina attachment surgery in September 2019, while he was housed at FCSO and being transported to and from medical appointments by PCSO staff. About a month later, Plaintiff's eye had gotten worse, and Tennessee Retina made clear that Plaintiff required urgent follow-up care. But Plaintiff was not taken to any follow-up appointments at that time, and Smith told Plaintiff that he would not get his "prescribed follow-up eye surgery" until he was transferred to a prison. For the purpose of initial review, that is sufficient to allege that Smith was aware of and deliberately disregarded Plaintiff's serious medical needs.

As to Dr. Levck, Plaintiff arrived at TTCC in late January 2020 with a "flagged order" reflecting that he needed to see an "outside eye care provider." Plaintiff was scheduled for an appointment with Dr. Levck on March 9, but he was not taken for it. Plaintiff filled out several sick call requests after that, and on May 22, Dr. Levck told Plaintiff that his eye appointment would be rescheduled "in his progress records." Liberally construing these allegations, it is reasonable to infer that Dr. Levck was aware of Plaintiff's serious medical needs, and that he deliberately disregarded them by allowing Plaintiff to go months without prescribed follow-up treatment.

10

Accordingly, the Court concludes that Plaintiff states arguably non-frivolous claims against Defendants Katie Smith and Dr. Levck in their individual capacities.

Plaintiff does not make the factual allegations necessary to state individual-capacity claims against the other thirteen individual Defendants. To the extent Plaintiff is attempting to hold some or all of these Defendants personally liable based on their positions as supervisors, "Section 1983 liability must be premised on more than . . . the right to control one's employees." Everson v. Leis, 556 F.3d 484, 495 (6th Cir. 2009) (citing Shehee v. Luttrell, 199 F.3d 295, 300 (6th Cir. 1999)). Plaintiff must allege, at least, that the supervisor "either encouraged the specific incident of misconduct or in some other way directly participated in it." Id. (quoting Shehee, 199 F.3d at 300).

Here, beyond naming them as Defendants, Plaintiff does not make any specific factual allegations regarding these Defendants in the body of the Amended Complaint. Even under the liberal construction given to pro se pleadings, that is insufficient to state a claim. See Gilmore, 92 F. App'x at 190 (citing Flagg Bros. v. Brooks, 436 U.S. 149, 155–57 (1978)) ("Merely listing names in the caption of the complaint and alleging constitutional violations in the body of the complaint is not enough to sustain recovery under § 1983."). Accordingly, Plaintiff's individual-capacity claims against the remaining thirteen individual Defendants will be dismissed.[3]

### 5. Official-Capacity Claims

Turning to Plaintiff's claims against Centurion and the fifteen individual Defendants in their official capacities, "individuals sued in their official capacities stand in the shoes of the entity they represent." Alkire v. Irving, 330 F.3d 802, 810 (6th Cir. 2003) (citing Kentucky v. Graham, 473 U.S. 159, 165 (1985)). Thus, the Pickett County Defendants represent Pickett County, the

---

[3] This includes Dana Dowdy, "Name Unknown" Health Care Provider with the PCSO, Michael Regan, Candy Price, Scheduling Supervisor Terry, "Name Unknown" Heath Care Provider with the FCSO, Lorrie Henson, Trulener Walter, Edmund Lane, Tony Parker, Marina Cadreche, Kenneth Williams, and "Name Unknown" Health Care Provider with Correction Corporation of America.

11

Fentress County Defendants represent Fentress County, the TTCC Defendants (and "Name Unknown" Health Care Provider with Correction Corporation of America) represent CoreCivic,[4] the MCCX Defendant represents Centurion,[5] and the TDOC Defendants represent TDOC.

To state a claim against private entities like CoreCivic and Centurion, or governmental entities like Pickett County, Fentress County, and TDOC, Plaintiff must allege that they had a policy or custom that directly caused him to suffer a constitutional violation. Savoie v. Martin, 673 F.3d 488, 494 (6th Cir. 2012) (citing Miller v. Sanilac Cnty., 606 F.3d 240, 255 (6th Cir. 2010)) (private entity); Hardrick v. City of Detroit, Mich., 876 F.3d 238, 243 (6th Cir. 2017) (citing Monell v. Dep't of Soc. Servs., 436 U.S. 658, 690–92 (1978)) (municipality). Moreover, each entity can only be liable for a policy or custom "of that [entity], rather than a policy or custom of" another entity. See Johnson v. Karnes, 398 F.3d 868, 877 (6th Cir. 2005) (citations omitted) (noting the distinction between a policy or custom of a municipality, and a policy or custom of a private contractor).

Liberally construing the Amended Complaint, Plaintiff provides specific factual allegations from which the Court can reasonably infer a policy or custom attributable to three entities: Pickett County, Fentress County, and Centurion. Because Plaintiff fails to allege such a

---

[4] The Court takes judicial notice that Correction Corporation of America is now known as CoreCivic, and that CoreCivic is the private entity contracted to manage TTCC. See Trousdale Turner Correctional Center, TENNESSEE DEPARTMENT OF CORRECTION, https://www.tn.gov/correction/sp/state-prison-list/trousdale-turner-correctional-center (last visited Apr. 16, 2021).

[5] Plaintiff alleges that Dr. Edmund Lane is a Centurion employee working at MCCX. (Doc. No. 16 at 19). The Court therefore presumes for the purpose of initial review that Centurion is a private entity contracted to provide medical care to inmates at MCCX.

policy or custom as it relates to CoreCivic and TDOC, Plaintiff's official-capacity claims against the Defendants representing those entities will be dismissed.[6]

As to Pickett County, Plaintiff alleges that PCSO Jail Administrator Katie Smith told Plaintiff that he would not get his "prescribed follow-up eye surgery" until he was transferred to a prison. The Court liberally construes this as an allegation that Pickett County has a policy or custom of delaying necessary medical treatment for inmates who may be transferred to a prison facility in the future. As to both Pickett and Fentress Counties, Plaintiff alleges that the PSCO and FSCO denied him "surgical appointments to save cost," which the Court construes as an alleged policy or custom of denying necessary medical treatment for monetary reasons. And as to Centurion, Plaintiff alleges that Amanda Kelly, a state counselor at MCCX, said, "medical explained to her that [Plaintiff] probably could not get an eye appointment before" his release on parole in May 2021. The Court liberally construes this as an allegation that Centurion has a policy or custom of denying necessary medical treatment for inmates nearing their release dates.

For the purpose of initial review, the Court concludes that Plaintiff has adequately alleged that these policies or customs caused the constitutional deprivations alleged in the Amended Complaint. The Court therefore concludes that Plaintiff states arguably non-frivolous claims for denial of adequate medical care against Pickett County, Fentress County, and Centurion. Defendants Dana Dowdy and Michael Regan, as the respective Sheriffs and representatives of Pickett and Fentress Counties, will remain as Defendants in their official capacities. And Centurion itself is named as a Defendant. Accordingly, Plaintiff's official-capacity claims against the other

---

[6] This includes "Name Unknown" Health Care Provider with Correction Corporation of America and TTCC Drs. Levck, Lorrie Henson, and Trulener Walter, as well as TDOC employees Tony Parker, Marina Cadreche, and Kenneth Williams.

13

Case 3:21-cv-00067 Document 17 Filed 04/19/21 Page 13 of 15 PageID #: 216

Defendants representing these three entities will be dismissed as redundant.[7] See Jackson v. Shelby Cnty. Gov't, No. 07-6356, 2008 WL 4915434, at *2 (6th Cir. Nov. 10, 2008) (affirming dismissal of redundant official-capacity claims).

## II. Appointment of Counsel

"A district court has discretion to appoint counsel for an indigent civil litigant." Richmond v. Settles, 450 F. App'x 448, 452 (6th Cir. 2011) (citing 28 U.S.C. § 1915(e)(1) and Reneer v. Sewell, 975 F.2d 258, 261 (6th Cir. 1992)). "The appointment of counsel in a civil proceeding is not a constitutional right and is justified only in exceptional circumstances." Lanier v. Bryant, 332 F.3d 999, 1006 (6th Cir. 2003) (citing Lavado v. Keohane, 992 F.2d 601, 604–05 (6th Cir. 1993)). "To determine whether these exceptional circumstances exist, courts typically consider 'the type of case and the ability of the plaintiff to represent himself.'" Id. (citations omitted).

Here, the appointment of counsel is warranted for at least three reasons. First, the alleged constitutional violations and Plaintiff's resulting injuries are severe. (See Doc. No. 16 at 5 (alleging that, as a result of the asserted constitutional violations, Plaintiff is now blind in his right eye)). Second, this matter presents legally complex issues, including the statute-of-limitations issue identified above and the unique legal standards involved in litigating a Section 1983 claim against municipalities and private entities. And third, Plaintiff's ability to represent himself may be limited by the location of Defendants and the factual bases for his claims, which spans several facilities and two judicial districts. Accordingly, the Court will exercise its discretion to appoint counsel for Plaintiff.

---

[7] This includes: PCSO employees Katie Smith and "Name Unknown" Health Care Provider; FCSO employees Candy Price, Scheduling Supervisor Terry, and "Name Unknown" Heath Care Provider; and MCCX Dr. Edmund Lane.

**III.     Conclusion**

For these reasons, the Court concludes that Plaintiff states arguably non-frivolous claims for denial of adequate medical care against: Defendants Katie Smith and Dr. Levck, in their individual capacities; Pickett County, as represented by Sheriff Dowdy in his official capacity; Fentress County, as represented by Sheriff Regan in his official capacity; and Centurion. These claims will be referred to the Magistrate Judge for further proceedings consistent with the accompanying Order, along with Plaintiff's request for injunctive relief "ordering Defendants to implement a proper medical plan and pay for the treatment of Plaintiff's eye condition."

The Clerk will be directed to appoint counsel for Plaintiff from the civil appointment panel. Counsel will be directed to appear and file an Amended Complaint, or request an extension of time to do so, within 30 days of appointment.

   _____
   WAVERLY D. CRENSHAW, JR.
   CHIEF UNITED STATES DISTRICT JUDGE